---

### In re HEDGES' WILL.

(Supreme Court, Appellate Division, Second Department. January 11, 1901.)

1. WILLS—UNDUE INFLUENCE—EVIDENCE.

It appeared that the beneficiary was the niece of testatrix, and that, being obliged to support herself, she had refused to resign her position as a school teacher and live with testatrix unless she should be made the beneficiary. Some years prior to the making of the will, testatrix had executed another will, in which the niece was the principal beneficiary. There was testimony that testatrix had stated that B., a friend of the beneficiary, had urged her to make the will in contest. B. testified that testatrix had asked her to draw the will, but that she refused to do so, or to secure an attorney to do it. Neither B. nor the beneficiary was present when the will was drawn, and it was not claimed that the beneficiary had done more than fix the terms on which she would live with testatrix. Held, that the evidence was insufficient to show undue influence.

2. WITNESSES—CONVERSATIONS WITH DECEDENT.

Code, § 829, declaring that a person interested in the event shall not be examined in his own behalf or interest, or in behalf of the party succeeding to his interest, against the executor, administrator, or survivor of a deceased person, did not prevent heirs at law of the testatrix from testifying in a will contest, in favor of the beneficiary as to conversations with testatrix.

Appeal from surrogate's court, Suffolk county.

Appeal from a decree of the surrogate court of Suffolk county adjudging a paper propounded as the will of Esther M. Hedges to be invalid. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and JENKS, JJ.

John L. Cadwalader (Robert S. Pelletreau, on the brief), for appellants.

Timothy M. Griffing, for respondents.

WOODWARD, J. We are unable to find any definition of "undue influence" which fits the facts in this case, conceding them to be the most favorable possible in support of the decree. Esther M. Hedges was a widow, without children, and was, at the time of making and executing the paper now under review, approximately 74 years of age. The beneficiary, if this paper is sustained as the last will and testament of the deceased, was the daughter of a deceased sister of the testatrix, and was given into the care of Mrs. Hedges at the time of the mother's death. She has been regarded, if not as a daughter, at least as the special charge of the testatrix, who has educated and cared for her much of the time during her minority. That the beneficiary, Mary Dominy, was the favorite of the deceased is evidenced by a former will put in evidence by the contestants, in which, after making bequests ranging from $100 to $500 to other relatives, aggregating $3,600, the remainder of the estate, estimated at about $10,000, is given to Mary Dominy. This will was made and published on the 20th day of November, 1895, and in May, 1898, a codicil was added, in which bequests of $600 were made, leaving the residuary estate to be disposed of as before. Some time in July following this codicil, Mrs. Hedges fell and sustained serious injuries, which compelled her to take refuge in a hospital or sanitarium for some time, and which left her in a position where it became necessary to board, or to have some one live with her. Mary Dominy had some time prior to this secured employment as a school teacher in Brooklyn. The evidence brought forward to show undue influence consisted in showing that this woman, advanced in years and afflicted by accident, had complained to some of the neighboring women that Mary was ungrateful; that she would not give up her position as a teacher and come to live with her unless Mrs. Hedges would consent to make her the beneficiary of her will. It is conceded by counsel for the contestants "that Mary Dominy had a perfect right to fix the terms on which she would comply with the wishes of the decedent," but it is urged that "she had no right, by constant pressure, persuasion, and effort, either directly or through her officious friend, Miss Bell, to overcome the manifest desire, will, and purpose of decedent, and secure to herself

the entire estate." The witnesses in behalf of the contestants did not show any importunities on the part of Mary Dominy. The most that could be inferred from their testimony was that Mary Dominy, who was apparently obliged to provide for her own support, was unwilling to leave her employment and engage to live with the decedent during the remainder of her life unless she should be placed in a position where she would be cared for; but several of them testified that Mrs. Hedges had told them that Miss Bell had urged her to make a will in behalf of her friend Mary Dominy, and that Miss Bell had offered to draw the will for her. Miss Bell was called as a witness in behalf of the proponents, and testified that she had had conversation with Mrs. Hedges; that Mrs. Hedges had declared her intention of giving Mary Dominy all of her property; that Mrs. Hedges asked her to draft a will for this purpose, which the witness declined to do; that she then asked her to go for Judge Hedges, for the purpose of having him draw the will, and this the witness refused to do, declaring that she thought it improper, and that she knew nothing about wills.

In a much stronger case (Horn v. Pullman, 72 N. Y. 269), where a witness had testified that the testator had replied to a question by his son as to why he had given all his property to Cornelius, "that Sarah Pullman ['Cornelius' wife] had hell-pecked him all the time, until he was obliged to do what he did," Mrs. Pullman testified that she had never talked with the testator in reference to making his will or the disposition of his property; and the court say that, "aside from this declaration of the testator, there is no evidence that she ever did, and his declaration is mere hearsay and no evidence of the facts stated." The same may be said of the matters alleged in reference to Miss Bell. But, even assuming that Miss Bell had done the things which are alleged, there is nothing to show that she went beyond a reasonable representation of the facts and circumstances in behalf of her friend. It is apparent, if the testimony that she offered to draw the will was true, that Mrs. Hedges had sufficient control over her own mind to reject this offer, as the paper offered for probate was drawn by a lawyer who was sent for by the testatrix. If Miss Bell could not control her in an incidental detail, it is difficult to understand by what process of reasoning it can be assumed that she exercised an undue influence in determining the contents of the will, which was drawn by another, and not in the presence of this young woman, whose relations with the testatrix were not such as to raise any presumptions in the premises. Jarm. Wills (2d Am. Ed.) 39, sums up the authorities, and says that:

"It seems to be the result of the cases that the influence, to vitiate an act, must amount to force and coercion, destroying free agency. It must not be the influence of affection and attachment. It must not be the mere desire of gratifying the wishes of another, for that would be strong ground in support of the testamentary act. Further, it must be proved that the act was obtained by this coercion,—by importunity which could not be resisted; that it was done merely for the sake of peace, so that the motive was tantamount to force and fear."

· There is absolutely no evidence that the will offered for probate was procured by the importunities of Mary Dominy, or of Miss Bell

in her behalf, or that this importunity on the part of Miss Bell or others was such as could not be resisted. On the contrary, it appears from their own evidence that Mrs. Hedges was so far in control of her own faculties and will that she did not accept the offer of Miss Bell to draw the will. .If we add to this the testimony of Miss Bell, which is in no wise impeached, the conclusion is irresistible that Mrs. Hedges was in no wise determined in her conduct by anything said or done by her.

If we accept the rule urged by the contestants' counsel, upon the authority of In re Soule's Will (Sur.) 3 N. Y. Supp. 259, that what constitutes undue influence "must necessarily depend in each case upon the means of coercion or influence possessed by one party over the other; upon the age, sex, the mental and physical condition, and the dependence of the other"; and "in which the mind of the person is wrought upon through constant persuasion and mental and moral pressure, or appeals to hope or fears, continued until the victim, for the sake of peace, is compelled to surrender his own wishes and do an act which he would not do or desire to do if left freely to act his own pleasure,"—we find no facts which bring the present case within the purview of the rule. Mrs. Hedges was a woman 74 years of age, possessed of at least $10,000 of property. She was abundantly able, therefore, to care for herself, and to employ such companionship as she might desire in a rural community during her natural expectancy of life. Mary Dominy appears to have been a young woman engaged as a school teacher, and Miss Bell was her intimate friend. At the time the will was made, Mrs. Hedges was at the home of her nephew, one of her heirs at law, and a beneficiary under the prior will, and neither Miss Bell nor Mary Dominy was present when the will was drawn. Miss Bell is not accused of making any threats. It is not suggested that she was in a position to use any force, or that she had the giving or withholding of anything from Mrs. Hedges; and, as to Mary Dominy, the will is made upon the "condition that she will live with and care for me during my life." It is conceded that Mary Dominy had the right to name the conditions on which she would give up her position and become the companion of Mrs. Hedges, and, aside from a very natural desire on her part to preserve her means of subsistence, there is no evidence of any influence whatever being brought to bear upon the decedent. The only dependence of Mrs. Hedges upon Mary Dominy was that she desired the latter to live with her and care for her; but the refusal of Mary to live with her aunt, except under conditions which she had a perfect right to make, cannot be said to be coercive, in any legal sense, nor does it indicate that "the victim, for the sake of peace," was "compelled to surrender" her own wishes. There is no presumption against a will because made by a woman of advanced age, nor can incapacity be inferred from any enfeebled condition of mind or body. Such a rule would be dangerous in the extreme. The law wisely sustains testamentary dispositions made by persons of impaired mental and bodily powers, provided the will is the free act of the testator, and he has sufficient intelligence to comprehend the condition of his property, and the scope, meaning,

and effect of the provisions of the will. Horn v. Pullman, supra. In Marx v. McGlynn, 88 N. Y. 357, 370, the court considers the question of undue influence, and after stating that an apparently intelligent and willingly executed will may be "procured by working upon the fears or the hopes of a weak-minded person; by artful and cunning contrivances; by constant pressure, persuasion, and effort, so that the mind of the testator is not left free to act intelligently and understandingly,"—it continues:

"It is not sufficient, however, for the purpose of establishing undue influence, to show that the will is the result of affection or gratitude, or the persuasion which a friend or relative may legitimately use; but the influence must be such as to overpower and subject the will of the testator, thus producing a disposition of property which the testator would not have made if left freely to act his own pleasure, and this kind of influence will not generally be presumed, but must be proved, like any other fact, by him who alleges it."

Mere incidental exclamations of the testatrix or complaints of ingratitude, or the fact that Miss Bell may have conversed with the decedent, are not sufficient to establish the kind of influence which must be exerted to nullify the provisions of a will executed with all of the formalities of the law by one who is concededly competent to dispose of her property by will. The influence or moral coercion, or by whatever other term designated, must be such as to overpower the will of the testator and subject it to the will and control of another, in which case it assumes the character of fraud. In re Snelling's Will, 136 N. Y. 515, 32 N. E. 1006.

But the contestants urge that the change of the testamentary intention is evidence of undue influence, and there is no doubt that under some circumstances this may be true, but the spirit of the will now under consideration is not so essentially changed as to afford any strong evidence in the matter now before us. In the will of 1895 Mary Dominy is the residuary legatee of a $10,000 estate, less than one-half of which is disposed of in small legacies among other relatives. It was the spirit of that will to make Mary Dominy the favorite of the testatrix, and the same spirit is manifest in the will now before us. Since making the original will the testatrix had not only grown older, but she suffered a serious accident, making it necessary to have assistance in her home. The conditions were changed, and with these came a change in the will; the very purpose of the new will being to provide for the companionship of the testatrix's favorite niece during the remaining years of her life. The circumstances surrounding the transaction, the inability of Mary Dominy or Miss Bell to exert any improper influence upon the testatrix, the fact that the will is not inharmonious with the spirit of the former will, and that no facts are brought out which indicate any undue pressure in behalf of the beneficiary, all tend to the one conclusion that the paper offered for probate should have been admitted as the last will and testament of the decedent.

The conclusion which we have reached upon the merits—this court having the same authority to decide questions of fact as the surrogate (In re Laudy's Will, 148 N. Y. 403, 408, 42 N. E. 1061; section 2586, Code Civ. Proc.)—makes it unnecessary to deal at length with

the question as to the right of the proponents to introduce the testimony of the heirs at law of the testatrix who do not join in the contest of the will as to conversations with the decedent. Proponents' counsel called Henry Dominy, a nephew, heir at law, and next of kin of the decedent, and questioned him as to conversations between him and decedent in the summer of 1898. Counsel for contestants objected on the ground that the witness was incompetent and disqualified under section 829 of the Code of Civil Procedure. Proponents' counsel then made an offer of proof as follows:

"I offer to call Jeremiah Dominy and also Tyson Dominy, also heirs at law, to testify in favor of sustaining the will and against their own interests, and to testify as to acts and declarations of the deceased, made to them and in their presence within three months of the date of the death of Mrs. Hedges, and during the months of September and October of the year 1898."

This offer was objected to under the Code provision mentioned, and the objection was sustained, to which the proponents' counsel excepted. We are of opinion that this was error in itself sufficient to justify a reversal of the decree. Without considering the question in its relation to Jeremiah Dominy, who, as one of the executors, may have had some interest in the matter,—though we do not undertake to decide this,—it is clear that the other two heirs at law were not within the reason of the rule laid down in the Code of Civil Procedure, which was intended simply to prevent interested parties from testifying as to conversations between themselves and deceased persons, who could not dispute the allegations made, and was not intended to close the mouths of witnesses who should be called against their own interests. The testimony of the witnesses offered could not have been in their own interests. To sustain the will was to deprive them of an interest in the estate. They were, under the ruling in Re Potter's Will, 161 N. Y. 84, 88, 55 N. E. 387, competent witnesses in behalf of proponents, and should have been permitted to testify.

The decree should be reversed, and a trial directed before a jury at a trial term of the supreme court of Suffolk county; costs of the appeal to abide the final awards of costs. All concur.